Appeals Act of Rationing And thus, the legal discretion is that I, Mr. Perona-Aguilar v. Holder, Proceed with the Immigration Judge's rebuttal. Although this application was never made by Mr. Perona-Aguilar, the Voluntary Department regarding this additional rule proceeds, or as a matter of fact proceeds, with both Immigration Judges reciting the word which proceeds, denying that which is in the Voluntary Department. The Voluntary Department's application was denied for the matter in which it proceeds. It was sustained by the Board of Immigration Appeals. However, this application, this application is a denial not only on statutory grounds, which in turn concedes that it was not in fact statutorily known, but it was also denied on discretionary grounds. The problem with this is that it was a problem of whether or not there was any evidence in support of this application from the Voluntary Department. Specifically, the issue was whether or not it had five years of legal service or whether or not it was deferred to the Department. It did not attain that five years of legal service given the current history of the mismanagement of any New England Board of Immigration Appeals Mr. Bolton. Your argument, if I understand it, is premised on the notion that there's a right to apply for voluntary departure. What's the basis of that right? Where do you find the right the petitioner has to apply for voluntary departure? Yes, Your Honor. I do note that it is a discretionary application. It's an application of the Department. It is up to the Federation of Judges who have to find discretion in order to apply to grant a voluntary departure. But in this instance, this assertion was that the application was made under the first prerogative of the petition that the Board of Immigration Appeals was effective. Sustaining the decision and denying it on discretion is a criminal case. And the Board of Immigration Appeals is being denied on discretionary grounds. If the Board of Immigration Appeals wants its discretionary application to be not reviewed as a criminal offense and have an uptick, why is it a criminal offense that it should assess on its decision to suspend a person's decision on an immigration application? That's what we're talking about. Well, this is kind of an unusual procedural case. Normally the time to accrue the good moral character wouldn't run after a person has been ordered deported. But here, because the original deportation order was overturned, the time then, because he was not technically deported yet, time continued to run. So when it went back, he was eligible to apply, but he didn't? No, he did not become eligible to apply until the second appeal was made. While the second appeal was made. And why does the time run after the second deportation order between that and the time of the appeal? Actually, the five-year term is continuous from the time... Does it now? Yes, Your Honor. So as soon as he acquired that, he became eligible to apply. The reason I'm asking you to run a court case is that the Supreme Court of the United States says there's a potential for immigration in the United States, and that petition has been approved. The United States Citizens' District is also running a petition to remove him from the United States legislature. So how do you see the need to immigrate to the United States if the petition is approved by the United States? That's the question. Counsel, it's Judge Gould with a question, please. So I understand it's hard to give much weight to the I.J.'s exercise of discretion when he had never applied and marshaled his equities. But is there any case that we can look to that says it's an abuse of discretion for the BIA not to reopen once he becomes eligible? Okay, so we don't have a case squarely on point, but it's the basic idea that, in principle, the agency shouldn't be making a ruling relating to the discretion when he never had a chance to apply. Well, did he argue to the BIA that it should give him grant money? What was his argument to the BIA? No, what did he argue to the BIA with respect to voluntary departure? Okay, so he didn't marshal any arguments or show what he would have said to the I.J.? I know, but it exercises a pretty broad function. So is it your position the BIA, as a matter of law, was required to rename it? He did not have a firm decision as to what was intended. Okay. I think perhaps we should hear from the government. You deserve the remainder of your time. Thank you. Petitioner's entire argument with respect to voluntary departure is premised on an incorrect factual premise. I want to direct the court to the administrative record at page 415 of the review of the transcript. This is the initial smoogle here. On April 8, 2008, Petitioner's counsel specifically requested voluntary departure on that. He has a petitioner. He is an immigration justice. All right. Anything else, Mr. Gleckman? No, no. That's it. Thank you. Question. Do you want to qualify the respondent for voluntary departure? Answer. Yes, I will. Yes. Mr. Gleckman to Corona Aguilar, the petitioner. Question. In the event your application for political asylum is not approved, will you agree to leave the country voluntarily? Yes or no? Yes. Then the discussion proceeds on to talk about whether he has money to postpone, which he confirms that he does. So I'm not sure where this idea that this is a phantom application came from. It's clearly there. And this is the same law firm that represented Petitioner at the trial proceeding. Now, as you look at the record, too, and you go on to the first appeal to the board, that's at administrative record 369. The immigration judge does expressly deny that application, which I just read was pending. When Petitioner appeals that decision to the board for the first time, I would refer the court to administrative record at page 339. In his appeal of that first IJ decision, Petitioner states on brief to the board, quote, At a hearing on the merits of his applications on April 8, 2003, the IJ found him not credible and denied his applications, blah, blah, blah. Further, the IJ also denied the application for voluntary departure. So he's telling the board it was pending and it was denied. The board then looks at the case at that point, remands it, but did not rule on any of the issues that were properly put in front of it, including voluntary departure. The board says we do not believe that the adverse credit portion lies with requirements. We're going to send it back for that limited purpose of having the court revisit that and write the opinion in a manner that does comply. Well, wasn't the voluntary departure also denied, if not expressly, at least inferentially, on adverse credibility grounds as well? I mean, that's the part of this that's sort of... Well, actually, I think that the argument Petitioner was making was that the adverse credit was in part based upon criminal reasons, which I disagree with and will address that point too, but I was trying to clarify the voluntary departure, but that's the focus of Petitioner's argument. As the Petitioner goes up, I would note that when the case gets remanded back, the administrative record, if you look starting at page 109, the parties discuss on the record with the immigration judge what's the purpose of this remand, and they all agree it's just to revisit adverse credit. The immigration judge even says, starting on page 111 of the transcript, I don't think the BIA made a determination on anything because all they did was reset it back for credibility finding. All the parties agree. So, again, I believe that the voluntary departure act was pending and hadn't been ruled on by the board yet. The board expressly did not rule on anything, sent it back for more on the adverse cred. If you look at the administrative record on page 120 through 123, you'll see the parties discussed, perhaps, is there any other applications which might apply to 12H waiver because the court wants them to consider it. The BIA specifically instructs petitioner's counsel, you need to look into what applications are. But did they take up voluntary departure expressly at that time? It wasn't, again, no, to answer your question, but the limitation of the clause for adverse cred, but, again, the parties discussed it. The fact is he was statutorily ineligible. The judge had already told him that, and he knew that. So just to keep renewing it when it was sort of frivolous, or pointless, I should say, I don't mean to say he was frivolous, but it would have been futile, really, to say it again about voluntary departure when, in fact, it had already been denied. If you look at when the board rules the second time, the immigration judge, the immigration judge makes a statement at the very beginning about he didn't apply for voluntary departure. I think that's where maybe some of the confusion comes in. That's not an accurate statement. I think maybe, and I don't want to speculate, but perhaps the judge meant he didn't renew it at the second time. Well, what was the response of that second instance to the immigration judge saying, my understanding is you're not applying for voluntary departure? What was the response? Well, he made that statement in the opinion,  but then toward the end of the opinion, he specifically denies the application that was pending, at this point hadn't been denied by the board, and previously had been denied by the IJ. He denies it again, both on statutory eligibility grounds and on discretionary grounds. Yeah, but he was not eligible at that time because his time hadn't run. Certainly, statutorily, the five years hadn't lapsed, and the judge said you're convicted of some serious felonies, and in that exercise of my discretion, I will deny it. He said that, yeah. Do you agree that the time ran while the appeal was pending before the board, or while he was appealing? The five years. My understanding as a lawyer, NTA would stop the running of time for purposes of approval, and I can supplement in writing the position on that because I wasn't an issue. That's my understanding of the law. But, no, I think the NTA stops the clock, so to speak, of approval of legalized time. But, anyway, then when the board or the IJ denies again the pending application, it goes to the board. If you look at the petitioner's pleadings before the board, he specifically says again, and I would put this is at administrative records, page 10. In his brief, he says, the petitioner specifically says, the immigration judge further denied respondents alternative application for voluntary departure on the grounds that the respondent could not establish the requisite good moral character due to the timing of his criminal convictions. Then he specifically says in his brief to the board, we would like you to send this back so we can renew, quote, unquote, renew his request for voluntary departure because now the five years has lapsed. So the concept, I think the whole argument is premised on an incorrect factual assertion. The application was made. It was discussed. He was not eligible. The fact is he is now eligible. Counsel, it's Judge Gould. If I could ask you a question, please. Okay, so let's accept or assume that he did make an application when he was not eligible. Notwithstanding, why shouldn't the board let him apply when he is eligible and can fully marshal all the evidence that might bear on whether he can get voluntary departure? Well, most are not for the purpose of revisiting previously denied applications. This application was pending. It was denied most statutorily. Okay, but when it was denied, he wasn't eligible, right? So a statement about discretion, in a sense, was a dictum because it wasn't really needed. Well, I think that any kind of agency that denies an application or a pending one, they often have several alternative grounds. In this case, there were two grounds. There was statutory issue as well as the government and the agency saying, as a matter of discretion, we deny this application. This is someone who has committed serious violence in this country, and we deny it on a matter of discretion. Now, the fact that one of the reasons that he is no longer ineligible has now lapsed, by a pure lack of time, that doesn't give him a right to now apply again a second time for this very same relief. I would point the court to the Fernandez case because, in that case, it talks about the court's jurisdiction to review these types of things, and it talks about new and different applications that were not just a revisitation of the prior act. In those circumstances, the court has jurisdiction to review a board's denial. The petitioners, I believe, in this case, try and guide that. Factually, it's falling under that category, but that isn't the case. I think that the application was denied on two alternative grounds. One of them may have lapsed by time, but, again, I think that the bottom line here is that their whole argument collapses when the factual premise is gone. Okay. You have used your time. Okay. And, finally, the other issues have been completely waived. Your Honor, a respondent would request that the court affirm the finding of denial of asylum based on adverse credit, and also find that the board did not abuse its discretion. Thank you. Your Honor, as I would note, Mr. Perrone's opening brief at Pages 13 and 14 cite portions of the record where he appeared initially in front of both immigration judges at his initial removal proceedings, and he then appeared in which counsel specifically states that those files were addressing the charging document of his immigration case, but he's not seeking voluntary departure. Can I ask you, Mr. Booth, to just confirm for me what you think the appeal at this point is? You're not appealing from your brief, it appeared. You were no longer pursuing the decision of the immigration judge to deny voluntary departure. What you are seeking, and the only thing you're seeking now, is a remand for the opportunity for your client to develop the record on that question. Correct, Your Honor. All right. Even though the immigration judge, during that proceedings, offered him an opportunity to fly for voluntary departure, something that had already been determined that he was not statutorily eligible for, nevertheless, I agree with the government that that application was, in some matter, given to the judge, but that was at the invitation of the judge, and perhaps the judge simply didn't remember at that time that he was statutorily ineligible. It seemed like that whole portion of the remand proceedings was a bit too much. So I would ask that the court... Well, what would you show, if it were to go back, that he's entitled to voluntary departure? Well, I wish he was in his good moral character. So it would be to bring in witnesses to testify to his actions subsequently. Mr. Perrone has not been arrested since these incidents in 2000, which caused the situation in the first instance. And as long as he can bring in witnesses to the court for affidavits to support that he is a person of good moral character and is worthy of the exercise of the discretion of the immigration judge, then there's no circumstance of voluntary departure. Any further questions? Thank you, Counsel. The matter just argued is submitted for decision. The next case is Gonzalez-Gomez v. Holder v. McCue and are submitted on the briefs, and it is so ordered. We'll hear the next case for argument, Mitchell v. Martel. Thank you.
judges: Seeborg, Schroeder, Gould